**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold SMITH, Defendant-Appellant.**

**No. 74–3538.**

United States Court of Appeals, Fifth Circuit.

July 9, 1975.

Rehearing and Rehearing En Banc Denied Oct. 2, 1975.

Jerome C. Hafter (Court-appointed), Greenville, Miss., for defendant-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before CLARK, Associate Justice,* and GOLDBERG and AINSWORTH, Circuit Judges.

PER CURIAM:

Appellant was convicted by a jury in the Northern District of Mississippi on one count of transporting a stolen automobile in interstate commerce (18 U.S.C. § 2312) and one count of concealing that automobile (18 U.S.C. § 2313). A third count—charging appellant with escape from custody (18 U.S.C. § 751) after be-

* Of the Supreme Court of the United States (Retired), sitting by designation.

ing arrested for a separate and earlier Dyer Act violation arising in Louisiana—was severed prior to trial.

On appeal, Smith raises three claims: (1) all pending charges against him from Louisiana and Mississippi should have been transferred to the Southern District of Indiana where he was apprehended following his escape from custody; (2) incurable error was committed when a representative of the vehicle owner inquired at the close of his testimony if he could ask the appellant "where he got the car"; and (3) the district court erred in admitting into evidence a car-key-making kit seized inside appellant's rented mobile home in Mississippi when he was arrested. We find no merit in any of the contentions.

■ Appellant argues that his removal from the Southern District of Indiana to be tried in the Northern District of Mississippi violated his "right" to obtain a transfer under Fed.R.Crim.P. 20. Appellant requested a transfer of the earlier pending Dyer Act charges from Louisiana and the Mississippi escape charge. The United States Attorney for the Southern District of Indiana, however, did not agree, informing Smith's counsel by letter that "the attempt to obtain disposition of these two cases in this District is impractical inasmuch as several other charges against this defendant are being considered in Mississippi" (*i. e.* the instant charges as well as possible firearms violations). Rule 20 specifically requires the consent of the United States Attorney for each district involved, and we find nothing arbitrary or unreasonable about the refusal in this case. A defendant has no unilateral right to a transfer. See United States v. Zink, 436 F.2d 1248, 1250 (8th Cir. 1971). See also Hutto v. United States, 309 F.Supp. 489, 492–93 (D.S.C. 1970).

■ Smith next claims that he was incurably prejudiced by the following occurrence at the conclusion of redirect examination of Mr. Charles Jordan, sales manager of the Ford dealership from which the vehicle in question was stolen:

Q. All right. Thank you. Excuse me. Do you have further explanation?

A. Could I ask him where he got the car?

THE COURT:

No, you can't ask him.

MR. KILPATRICK [Defense Counsel]:

Your Honor, we are going to object to that.

THE COURT:

Yes. The jury is to disregard the question.

MR. KILPATRICK:

Your Honor, may I be heard on a matter briefly?

THE COURT:

Yes.

MR. KILPATRICK:

I would like to address the Court in chambers.

THE COURT:

All right. I will see you in chambers.

(Chambers)

THE COURT:

All right, sir.

MR. KILPATRICK:

If Your Honor please, comes now the defendant, Harold Smith, and moves the Court to declare a mistrial on both Count 1 and Count 2 of the indictment charged against him on the highly prejudicial statement of the witness, Charles E. Jordan, in front of the entire jury panel when he asked the defendant where he got the car.

THE COURT:

Well, the Court will deny the motion. The Court instructed the jury to disregard the question and there was no prejudice done. It was obviously an improper comment from the witness, but the prosecution is not responsible. I

do not think it had any effect whatever on the jury.

In submitting the case to the jury, the district court cautioned the jury in his general charge, as follows:

> Now the law does not compel a defendant in a criminal case to take the witness stand and testify. And, no presumption of guilt may be raised, and no inference of any kind may be drawn from the failure of a defendant to testify. The law does not impose upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Under these specific circumstances, we conclude that no prejudice resulted from the witness' inquiry.

■ Finally, appellant claims that a kit for making car keys, which was seized by the police during his arrest in Mississippi, should have been suppressed. The facts are these: On May 10, 1974, FBI agents arrested Smith at his rented mobile home in rural Winston County, Mississippi, on a warrant based upon an earlier Dyer Act indictment from the Western District of Louisiana. The agents had received information that appellant was armed and accompanied by at least one other person. At the trial, the arresting agent testified, as follows:

Q. What did you do then when you arrived at the trailer where you had located Mr. Smith?

A. Well, we surrounded the trailer, had access to the front door, and the rear door, and we had information that he was armed, so we all hid behind cars, took shelter behind cars and called to him and had a bull horn and used a siren and waited until finally he opened up the back door of the trailer.

Q. And how long did that take?

A. Approximately fifteen minutes.

Q. And what did you do then when he opened the door?

A. Well, prior to that time, I had ran up to the front door of the trailer and kicked the door open and gone back, behind the car, and told him to come out again and, at this point, he came out the back door. Then, as he did, there were three of us that went in the front door.

Q. All right, sir. Was anyone else present in the trailer at the time you entered it?

A. Yes, his brother was there.

The agent went on to describe what he observed on entering the trailer:

Q. I believe you told us that you arrested Mr. Smith at the door and entered the trailer at that time. Isn't that correct, Mr. Warberg.

A. Yes.

Q. Just tell us what you did when you entered the trailer.

A. We entered the trailer. As we did, as we walked in the front door, there was just kind of a living room and a kitchen, and on it—there was a kitchen table right there and on the table was this kit and it was open.

Q. On the table?

A. Yes.

■ In addition, a loaded shotgun was recovered from the trailer. In light of the high potentiality for danger surrounding the arrest, we conclude that the entry into the trailer was allowable for the purpose of making a cursory safety check. Only once before, in United States v. Looney, 481 F.2d 31 (5th Cir. 1973), has this Court approved a house-wide search during an arrest. In both *Looney* and the present case the circumstances provided, at the least, probable cause to believe that a serious threat to safety was presented. This Court will strictly scrutinize such alleged precautionary searches to insure that there exists a serious and demonstrable potentiality for danger. *Compare* United States v. Sellers, 520 F.2d 1281 (4th Cir., filed April 10, 1975), *with* United States v. Basurto, 497 F.2d 781 (9th Cir. 1974). In light of our view that here such criteria were met and that the entry was

allowable, the kit, being in plain view, was admissible in evidence.

Reviewing the record in this case and noting appellant's concession in his brief that the evidence "was, in fact, marginally sufficient to support a conviction on both counts," we are of the opinion that there was substantial evidence from which the jury could determine credibility and guilt and that there is no reason to disturb its findings. The judgment is therefore, affirmed.

Affirmed.