Stephen Henry SABLOWSKI, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 10095.

United States Court of Appeals
Tenth Circuit.

Nov. 13, 1968.

John R. Cooney, Albuquerque, N. M., for appellant.

John A. Babington, Asst. U. S. Atty., Albuquerque, N. M. (John Quinn, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The appeal is from a judgment of conviction and sentence for violation of the Dyer Act, 18 U.S.C. § 2312.

On December 30, 1967, at about 11:00 o'clock a. m., Officer Moreno of the New Mexico State Police received a report by radio that two young men dressed in military fatigues had attempted to sell a white Falcon automobile at a curio shop located about 40 miles west of Las Cruces, New Mexico. The officer being in that vicinity when he received the report, soon thereafter observed a white Falcon going east on the highway and proceeded to give chase, finally stopping the vehicle. Appellant and his co-defendant, Jenders, both dressed in military fatigue clothing, were the occupants of the car, with Jenders in the driver's seat. The officer asked to see the car registration certificate and Jenders' driver's license. When neither was produced the officer pressed the two men for these items of identification. Under these circumstances, appellant jumped from the car and stated: "All right, you got us and we stole the car." Moments later State Police Officer Hutchison arrived at the scene to assist Officer Moreno. Both suspects then produced military identification cards and admitted being absent without leave.[1]

1. There was some conflict between the testimony of the officer and that of appellant but this conflict was resolved by the trial judge at the hearing upon defendant's motion to suppress in favor of the officer's testimony. Appellant testified in his own behalf at the trial and the jury apparently chose to resolve the conflict in the same manner.

The officers placed both men under arrest; advised them of their rights;[2] and proceeded to search them before taking them to Las Cruces where they appeared before a justice of the peace. The evidence is conflicting as to exactly what transpired at that time but appellant admitted that he knew he was confined to the county jail to be held for the military authorities. Moreno testified that as soon as he incarcerated the two men he notified the proper military authorities by telephone that the two were being held.

An Agent for the Federal Bureau of Investigation interviewed both men during the late afternoon of December 30 after advising them of their rights and procuring from appellant a written waiver of rights. Appellant again admitted the theft of the car and the fact that he was AWOL from the Marines. Sometime after 5:00 p. m. that Saturday afternoon, the F.B.I. Agent contacted the United States Commissioner at Las Cruces and the Commissioner set the appearance date for the two men for the following Tuesday, January 2, with Sunday and New Year's Day intervening.

Appellant, at the trial, admitted that he and Jenders stole the car in San Diego, transported it to New Mexico and that he drove the car about a hundred miles during the trip.

The points raised here are so unsubstantial and lacking in merit that they are easily disposed of.

■ Appellant first says that his arrest was illegal and that he was not sufficiently advised of his Constitutional rights prior to making the admissions to Officer Moreno. The officer had information that two men, wearing military fatigue clothing and driving a white Falcon car, attempted to sell the car at a curio shop. This information was clearly sufficient to justify the officer in stopping the car and inquiring about the car's registration certificate and the driver's license. Once the car was stopped by the officer and in the course of the investigation appellant volunteered the admissions that the car was stolen and that he was AWOL from the Marines. These were not forced, coerced or involuntary admissions, but were produced by on-the-scene questioning concerning state car registration and driver's license requirements. As such they are excepted from the rule laid down in Miranda v. State of Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The investigation had certainly not reached the accusatory stage and no effort had been made by Officer Moreno to elicit any admission from either appellant or Jenders, the driver of the car. With these admissions the officer legally arrested the two men and incident to the arrests, searched the persons of both men and the automobile in which they were riding. The search of the car was made after appellant and Jenders had admitted the car did not belong to them, thus the search was not an invasion of their property rights or of their privacy.[3]

■ Appellant contends that the oral statements made to the F.B.I. Agent were not admissible in that such statements were the product of the earlier illegal statements made by him to Officer Moreno and were "in violation of the McNabb-Mallory Rule." The first part of this point has been previously dis-

---

2. Officer Moreno testified he told them "You have a right to remain silent and anything you say may be used against you in court. You are entitled to talk to an attorney at present or at any time during the questioning. If you can't afford an attorney, one will be appointed for you." Appellant testified that Moreno handed him a card to read which had printed on it an explanation of his rights and after that he told the officer that the car was stolen and that both he and Jenders were AWOL.

3. Thomas v. United States, 394 F.2d 247 (10th Cir. 1968); Sumrall v. United States, 382 F.2d 651 (10th Cir. 1967), cert. den., 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853; United States v. Owens, 346 F.2d 329 (7th Cir. 1965); and Fox v. United States, 381 F.2d 125 (9th Cir. 1967).

cussed. The undisputed evidence shows that Sablowski was booked in the county jail at 11:20 a. m. following his arrest and appearance before a state magistrate earlier that morning. F.B.I. Agent Farrell interviewed him some four hours later after procuring a signed waiver of his rights.[4] Appellant then proceeded to voluntarily and freely tell the agent all of the facts surrounding the theft and transportation of the car. The agent thus confirmed that appellant had committed a federal offense and immediately went to the office of the United States Commissioner to secure a time for the appearance of appellant before such officer. It was then about 5:00 p. m. on Saturday, the next day was Sunday, the day following was New Year's Day, so the appearance date was set for Tuesday, January 2. The evidence does not show that appellant was questioned at any time by anyone during the interval between Saturday and Tuesday. The Government also correctly points out the further fact that appellant was admittedly AWOL from the Marines and the statutes expressly authorize civil law enforcement officers, state and federal, to apprehend straying members of the Armed Forces and to detain them for delivery into the custody of the proper armed forces authority.[5] This certainly precludes any possibility that appellant was illegally held in custody during this interval, although the case eventually became a federal one.

■■ The co-defendant, Jenders, prior to the trial of appellant, entered a plea of guilty and was sentenced. He appeared as a witness for the Government in appellant's trial and testified, without objection, generally to the facts of the case and was cross-examined. Appellant now urges error in permitting Officer Moreno to testify to statements made by Jenders, in the presence of appellant, at the time the car was stopped on the highway and the arrests made. To support this argument, appellant relies on Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This reliance is clearly misplaced. There is no similarity between the facts here and those presented in that case. Jenders' statements were all made in the presence of appellant at a time when the two co-defendants were actually perpetrating the crime for which they were later charged. In addition, all of Jenders' statements that are questioned now were a part of the res gestae. Wong Sun is not applicable to these facts.

■ Appellant's attack upon the sufficiency of the evidence is wholly without merit. By his own testimony at his trial he admitted sufficient facts to support all of the elements of the crime charged.

Affirmed.

---

4. "12–30–67  4:01"

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer any questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

"(signed) Stephen Sablowski"

5. 10 U.S.C. §§ 807, 808, 809.