**Willie BELTON, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 176–69.**

United States Court of Appeals, Tenth Circuit.

July 21, 1970.

Louis Parkinson, Englewood, Colo., for appellant.

Givens L. Adams, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., on the brief), for appellee.

Before BREITENSTEIN and HOLLOWAY, Circuit Judges, and CHRISTENSEN, District Judge.

HOLLOWAY, Circuit Judge.

This appeal is taken from denial of a motion pursuant to 28 U.S.C. § 2255 seeking to vacate a 1965 conviction following a jury trial. Appellant was then convicted under 18 U.S.C. § 2314 of unlawfully causing interstate transportation of a forged money order and received a 10-year sentence, subsequently reduced to 8 years. Appellant contends that identification testimony at his trial was produced by an identification procedure that was impermissibly suggestive and violative of due process.

On consideration of the § 2255 motion the trial court held that there were no factual issues to be determined and that, as a matter of law, appellant was entitled to no relief and denied the motion to vacate. The order stated that § 2255 relief is not a substitute for an appeal and that matters involving trial errors may not be reviewed collaterally, citing our prior decisions.[1] We consider this point below in connection with the Government contention that there was a deliberate by-passing of trial and appellate procedures for asserting appellant's constitutional claim. The order also pointed out that decisions recognizing the right to counsel at line-up procedures [2] are not retroactive,[3] so that appellant may not complain of lack of counsel at the confrontation where he was identified. However, we understand appellant's constitutional claim to be that the procedure was so suggestive as to violate due process principles that did then apply.[4] Therefore, we turn to the contentions about the due process claim.

We consider first the Government argument that appellant is barred from assertion of his constitutional claim because of deliberate by-passing of trial and appeal procedures in 1965 for assertion of the claim. The Government points to lack of a motion to suppress the identification testimony, lack of objection thereto at trial, and the failure to appeal. In the course of appellant's 1965 trial his counsel vigorously probed circumstances surrounding the witnesses' confrontation with appellant in seeking to discredit the identification testimony. However, it was not argued that such testimony was inadmissible.

In April, 1966, Palmer v. Peyton, 359 F.2d 199 (4th Cir.) held an identification procedure violative of ele-

---

1. The court relied on Kinnell v. Crouse, 384 F.2d 811 (10th Cir.), and Gaitan v. United States, 317 F.2d 494 (10th Cir.).

2. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

3. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1999.

4. Stovall v. Denno, supra at 301–302, 87 S.Ct. 1967.

mentary safeguards and proof thereof inadmissible under due process principles. However until the *Wade, Gilbert* and *Stovall* decisions in June, 1967, the overwhelming majority of American courts treated the identification question not as one of admissibility, but as one of credibility for the jury.[5] Thus, the due process decisions recognizing a constitutional ground for objection to the admissibility of tainted identification testimony came after appellant's trial and after expiration of time for a possible appeal. In these circumstances we cannot agree that the mere record showing of lack of such an objection to admissibility or failure to appeal standing alone established a deliberate by-passing of a known right. Kaufman v. United States, 394 U.S. 217, 227–228, 89 S.Ct. 1068, 22 L.Ed.2d 227; Fay v. Noia, 372 U.S. 391, 439–440, 83 S.Ct. 822, 9 L.Ed.2d 837; Johnson v. Zerbst, 304 U.S. 458–464, 58 S.Ct. 1019, 82 L.Ed. 1461. While evidence of awareness of the constitutional issue and of a choice to forego it may show a deliberate by-passing,[6] no such proof appears here. Therefore the merits of appellant's due process argument must be considered.

On the merits the Government argues that in any event the files and records conclusively show that there was no denial of due process in the identification procedure so that the judgment should be affirmed. Appellant says there was a denial of due process and that it was error to deny a hearing to resolve factual issues about the constitutional claim, relying on the proposition that his allegations related primarily to purported occurrences outside the courtroom on which the record cast no light. Machi-

broda v. United States, 368 U.S. 487, 494–495, 82 S.Ct. 510, 7 L.Ed.2d 473.

The essential facts are not in dispute and are as follows. Appellant's § 2255 motion made the general allegation that the out-of-court identification was so fundamentally unfair as to deny due process. Specifically appellant averred that he was arrested in Lawton, Oklahoma, on a vacation trip in July, 1965; that while there in jail on another charge, he was questioned about money orders reputedly stolen from a Minnesota pharmacy, and that he was convicted later of cashing a money order at a Lawton department store (the federal conviction in question). He said that to obtain an out-of-court identification he and another prisoner were taken to the Lawton detectives' office and questioned; that appellant was there identified by Woods, the store manager, as the one who cashed the money order on July 5, 1965; that until this point appellant had believed Woods was a policeman since everyone present but appellant and the other prisoner were wearing "plain clothes," and appellant had not realized the proceeding had changed from an investigation to a line-up; and that appellant was wearing clothes similar to those bought by the man cashing the money order, causing a tendency to identify him with the offender.

Appellant refers us to the original trial record to sustain his allegations. The Government has submitted that record which we have examined. It shows no material contradiction but does reveal some further facts about the identification procedure as well as the identification testimony at trial.

The store manager, Woods, identified appellant in court and also testified

---

5. See Stovall v. Denno, supra at 299–300, 87 S.Ct. 1967; and United States v. Sherman, 421 F.2d 198, 200 (4th Cir.).

6. See, *e. g.*, Kaufman v. United States, supra, 394 U.S. at 227, 89 S.Ct. 1068; Henry v. Mississippi, 379 U.S. 443, 451– 452, 85 S.Ct. 564, 13 L.Ed.2d 408; and United States ex rel. La Molinare v. Duggan, 415 F.2d 730, 733 (3d Cir.). Since

the trial court's 1968 order, *Kaufman* has recognized that federal post-conviction relief is available to federal and state prisoners to protect constitutional rights relating to criminal trial process, including protection against unconstitutionally obtained evidence, unless trial procedures to object to such proof were deliberately by-passed.

about his previous identification of him at the detectives' office. He said that appellant had bought a shirt and a pair of shorts on July 5, 1965; that he had been waited on by Sanders, the assistant manager, who brought appellant to Woods for approval of the money order for cashing; and that Woods watched appellant at the cashier's window and remembered his hands were shaking and also watched him leaving the store.

In August, 1965, Woods and Sanders were asked to go to the police station to see if they could identify the man who cashed the money order. Appellant and another Negro prisoner were brought to the detectives' office. Woods and Sanders identified appellant as the man who cashed the money order and purchased a shirt and a pair of Bermuda shorts.[7] They also said that the shirt worn by appellant when identified at the jail was like the one he had bought at the store.[8] Woods and Sanders both testified that they had been asked to pick out the man buying the merchandise and that the officers did not point to appellant or ask if he was the one.

The confrontation was covered on cross-examination by appellant's counsel who repeatedly questioned about the circumstances surrounding the pretrial identification. Appellant testified at his trial, denying the offense and saying he was in Chicago at the time. He said that he was in Lawton later in July on two trips with a friend named Mayes and was arrested there on another charge on July 30; that while he was in jail on that charge he recalled one man coming and looking at him, but did not know who he was; that at one time Mayes was with him, but no one else was during that time. He said that at the time of arrest and of the identification procedure he was wearing the shirt which had been identified by Woods and Sanders as similar to the one appellant

had bought on July 5; that he was wearing the larger plaid shorts; and that all the clothing had been bought in Chicago. Thus there was no real contradiction of prior testimony about the circumstances surrounding the identification procedure.

■ Accepting the facts alleged by appellant and shown by the trial record he relies on, we must measure the constitutional claim against the due process standard pronounced by the Supreme Court. The test is whether, judged by the totality of the circumstances, the identification procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process. Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402; Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247; Stovall v. Denno, supra, 388 U.S. at 302, 87 S.Ct. 1967.

■ Appellant says he did not know that Woods and Sanders were not officers when the confrontation in the detectives' office took place and did not realize that the proceeding had changed from an interrogation to a line-up. Appellant "had no right that he not be viewed." United States v. Quarles, 387 F.2d 551, 556 (4th Cir.); see also United States v. Wade, supra, 388 U.S. at 221–222, 87 S.Ct. 1926. And it was no violation of his rights that he was unaware of the purpose of the meeting. United States v. Quarles, supra, 387 F.2d at 553–554. He also argues that he was wearing clothes similar to those bought by the offender when the money order was cashed, saying that improper reliance for identification was placed on that one factor as in Palmer v. Peyton, 359 F.2d 199, 201 (4th Cir.) We cannot agree. The *Palmer* case involved dependence upon prior identification of a single suspect by voice alone—and obser-

---

7. The record is unclear whether Woods and Sanders were called into the detective's office at the same time. No contention is made about this point in connection with the identification.

8. Woods said appellant was wearing shorts at the jail, but that they were a larger plaid than his store carried. Sanders said he wore long trousers at the confrontation.

vation of a shirt removed from the suspect—and the absence of an in-court identification. Here Woods and Sanders observed the man while each did business with him. Woods testified that he saw his hands shaking at the cashier's window and also followed him and watched him leave the store. On observing appellant again in the detectives' office, both identified appellant. And both made an in-court identification at the trial. The circumstances are quite unlike the *Palmer* case.

Appellant says the critical events occurred outside the courtroom so that a hearing is necessary on the § 2255 motion. However, unlike the situation in Machibroda v. United States, supra, the record here does cast light on the facts. Appellant alleges the circumstances complained of in his motion, and the original trial record and particularly the cross-examination probed the circumstances of the confrontation. Thus we have considered all the facts asserted by appellant and in the original record he refers to.

There are factors weakening the identification case somewhat. We agree that a more objective procedure could have been arranged than the confrontation with just the two men, although similar arrangements have been sustained. See Hanks v. United States, 388 F.2d 171 (10th Cir.); and United States v. Black, 412 F.2d 687 (6th Cir.). And ideally it would have been preferable for appellant not to have been observed in clothes similar to those bought at the time of the offense, when identification was made in the detectives' office. However, there is no suggestion that appellant's manner of dress was planned and no indication that it was the basis of the identification, although Woods and Sanders did refer to this fact.

■ We conclude that the totality of the circumstances shows no denial of due process. There was good opportunity for observation of appellant by Woods and Sanders at the time of the offense and at the confrontation. They had given the police a description similar to the appearance of appellant.[9] They both made positive in-court identifications. Furthermore appellant's trial counsel explored the circumstances surrounding the identification procedure by cross-examination, which may expose the potential for error. See Simmons v. United States, supra, 390 U.S. at 384, 88 S.Ct. 967; Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016, 1024; and United States ex rel. Rutherford v. Deegan, 406 F.2d 217, 220 (2d Cir.). And after all the testimony by the Government witnesses on identification, appellant testified but offered no material contradiction about events surrounding the identification procedure, nor any other relevant facts about the confrontation.

We conclude that the § 2255 record and the original trial record show conclusively that appellant was not entitled to relief. On this basis we agree with the trial court that a hearing was not required and that the motion was properly denied. We rest our conclusion on our examination of the record, rather than on the special grounds cited by the trial court, for the reasons stated earlier.

Affirmed.

---

9. The officer testified to such similarity as a general observation, but details supporting it were not given and were not elicited by cross-examination.